1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  ALBERT HAYES,                ) Civil No. 07-0533-JAH(LSP)
                                 )
12                Petitioner,    )
                                 ) REPORT AND RECOMMENDATION
13  v.                           ) DENYING PETITION FOR WRIT OF
                                 ) HABEAS CORPUS
14  J.E. TILTON, Warden,         )
                                 )
15                Respondent.    )
    _____

16

17              **I.STATEMENT OF THE CASE**

18  **A. Overview**

19        Albert Hayes ("Petitioner"), a state prisoner proceeding

20  *pro se,* has filed a Petition for Writ of Habeas Corpus pursuant to

21  28 U.S.C. § 2254. Respondent Warden J.E. Tilton ("Respondent"),

22  has filed an Answer.  Petitioner has filed a Traverse to Respon-

23  dent's Answer.  The Court, having reviewed Petitioner's Petition,

24  Respondent's Answer, Petitioner's Traverse and all documents

25  lodged therewith, finds the Petitioner is not entitled to the

26  relief requested and recommends that the Petition for Writ of

27  Habeas Corpus be DENIED.

28

**B.  Procedural Background**

The San Diego District Attorney filed three charges against Petitioner in the San Diego Superior Court.  (CT 1-3.)  In count one Petitioner was charged with forcible rape [Ca. Pen Code,§261(a)(2)].  (CT 1.)  In count two, Petitioner was charged with assault with intent to commit rape (Ca. Pen Code, §220).  *Id.* In count three, Petitioner was charged with assault by means likely to produce great bodily injury [Ca. Pen Code, §245(a)(1)]. (CT 2.)  The District Attorney also alleged that Petitioner had been previously convicted of three prior "strikes" (Ca. Pen Code, §667(b)) and three prior felonies [Ca. Pen Code, §§667(a)(1), 668, and 1192.7(c)].  (CT 2-3).

Petitioner represented himself at trial.  (CT 593-620.)  On November 24, 2003, in the middle of the trial, Petitioner moved for a mistrial. The trial court denied Petitioner's Motion. (RT at 1256-62.)  On December 4, 2003 a jury found Petitioner guilty as charged on all counts, together with true findings regarding all of the prior conviction allegations.  (CT 621, 623-24, 626, 632-638.)

On March 15, 2004 Petitioner, at this point represented by counsel, filed a Motion for a New Trial based on a claim that the prosecution failed to make timely disclosure of notes of a police detective which were favorable to the defense.  (CT 472-80.)  On March 29, 2004 the trial court denied the Motion. (CT 642, RT 2141.)

On June 28, 2004 a sentencing hearing was held.  (CT 653.) The court sentenced Petitioner to state prison for an indeterminate term of twenty five years to life one count one.  *Id.*  Twenty

1   five year terms were also ordered for counts two and three but the

2   court stayed those terms pursuant to California Penal Code §654.

3   *Id.*   The trial court dismissed one of Petitioner's three strike

4   priors but ordered a consecutive term of five years for each of

5   Petitioner's three prior serious felony convictions, resulting in

6   a total enhanced sentence of fifteen years.   *Id.*   Finally, the

7   court ordered payment of a $2,000 restitution fine and payment of

8   victim restitution in an amount to be determined.   *Id.*

9        Petitioner appealed his conviction to both the California

10  Court of Appeal (Resp's Lodgment No. 1) and the California Supreme

11  Court (Resp's Lodgment No. 4.)   Both of his appeals were denied

12  (Resp's Lodgment Nos. 3, 5.)   Petitioner also filed two separate

13  Petitions for Writ of Habeas Corpus in the state courts. (Resp's

14  Supp. Lodgment Nos. 5, 7, 9, 11.)   The California Court of Appeal

15  and the California Supreme Court denied both of his Petitions.

16  (Resp's Supp. Lodgment Nos. 6, 8, 10, 12.)

17       On March 31, 2007 Petitioner, proceeding pro se, filed a

18  Petition for Writ of Habeas Corpus with this Court claiming multi-

19  ple grounds for relief.   On June 25, 2007, Respondent filed an

20  Answer to Petition for Writ of Habeas Corpus and a Memorandum of

21  Points and Authorities in support thereof.   Petitioner filed a

22  Traverse to Respondent's Answer.

23  **C.  Factual Background**

24       **i. Reliance on State Findings**

25       The facts which follow are taken substantially from the

26  California Court of Appeal opinion in *People v. Hayes*, No. D044714

27

28

1   at 2-6 (Cal Ct. App. Dec. 29, 2005) (Resp's Lodgment No. 3.)[1]

2          **ii.  Prosecution Evidence**

3          Patricia, a resident of Bell Hotel in downtown San Diego,

4   testified that at about 8:30 p.m. on March 21, 2003, she was

5   outside the hotel talking to a White male (Robert Rohena) and a

6   Black male.  Patricia had met Rohena before, but she had not

7   previously met the other man.  During the conversation, Patricia

8   learned that the men had been roommates in room four of the Bell

9   Hotel, but the Black male had just moved out of the hotel that

10  day.  After talking for about five to ten minutes with the two

11  men, Patricia walked down the street with the intention of panhan-

12  dling for money to buy beer.

13         When she was about a block away from the hotel, she saw the

14  Black male again and he asked her if she wanted to smoke some

15  "crack."  Patricia walked with him for about a block, but because

16  she started "getting some really bad vibes from him," she told him

17  she did not "want to do that with [him]."  When they reached the

18  corner of a fence near a freeway ramp, she started "feeling really

19  like [she] was in danger."  She wanted to leave the area, but the

20  man grabbed her hand and told her to sit down.  They started

21  arguing, and when she refused to sit down, he pulled her down by

22  the arm and slammed her to the ground.  She asked, "What the hell

23  is going on?"  He told her to [s]hut the hell up."  She resisted

24  him, and he hit her on the face with something hard that felt like

25  a brick or a rock.  She felt that she had better do what he said

26

27  _____

[1]

28  The Court relies upon these facts pursuant to 28 U.S.C. § 2254 (e).  *See*
    *Sumner* v. *Mata*, 449 U.S. 539, 545-47 (1981) (stating that deference is owed
    to factual findings of both state and appellate courts).

1  or he would "do something more" to hurt her.

2       Patricia asked if she could at least sit on a mattress that

3  was leaning against the fence.  The man pulled the mattress down

4  to the ground and let her sit on it.  He told her to pull down her

5  pants.  She complied, and the man had sexual intercourse with her.

6  At one point during the rape, she saw someone standing by a fence

7  on the other side of the street.  She started screaming to get the

8  person's attention.  Her assailant told her to shut up and choked

9  her until she "blanked out for a bit" and stopped yelling.  After

10  the man finished and stood up, Patricia pretended like nothing had

11  happened because "she wanted to live."  As they walked back down

12  the street, the man stated, "you sure you don't want me to give

13  you any money?  I'll give you $100."  Patricia responded, "I don't

14  want your damn money."  Prior to the rape, they had not discussed

15  exchanging money for sex, and she did not smoke rock cocaine with

16  him or acquire the drug from him.

17       The man left the area and Patricia returned to the Bell

18  Hotel.  As she walked back to the hotel, she had blood in her

19  mouth and could feel her face swelling up.  After Patricia arrived

20  at her room and told her boyfriend what happened, she and her

21  boyfriend went to hotel manager Diedre Grant's office.  Patricia

22  told Grant that she thought the person who attacked her was "that

23  Black guy" who had just moved out of room number four.  Grant

24  showed Patricia a copy of Petitioner's picture on his transit card

25  and Patricia stated that he was her attacker.  Grant called 911.

26       Grant testified that at about 10:30 or 11:00 p.m., Patricia

27  and her boyfriend came to the manager's apartment.  Patricia was a

28  "bloody mess."  She was bleeding from her nose and mouth, and her

1  face was swollen and distorted.  She was crying and hysterical and

2  told Grant she had been raped by the "Black man in room four."

3       After reporting the rape, Patricia was transported by

4  ambulance to the hospital.  The examining nurse testified that

5  Patricia had "massive facial trauma," consisting of abrasions and

6  bruising on the entire left side of her face; a laceration on the

7  left side of her tongue consistent with having been it in the face

8  with a hard object such as a brick; and a vaginal laceration

9  consistent with nonconsensual intercourse.

10       DNA testing revealed a match between Petitioner's DNA and

11  semen found in Patricia's vagina. (Resp's Lodgment No. 3).

12       **iii. Petitioner's Defense**

13       Petitioner testified on his own behalf. He stated that on

14  March 21, 2003, he was moving out of the Bell Hotel to the Center

15  City Hotel because the Bell Hotel was plagued by drug users.

16  Petitioner testified that he did not use drugs, and that he worked

17  for an organization called Christ Missionary that solicited funds

18  to assist the homeless and other individuals in need.  On March

19  21, 2003 at about 3:30 p.m., Petitioner left the Bell Hotel and

20  went to a phone booth to call his sisters to ask them to come help

21  transport his possessions to his new hotel room.  After Petitioner

22  made the phone calls, he walked back to the Bell Hotel when he saw

23  Rohena walking up the street and Patricia coming out of the hotel.

24  Petitioner, Rohena, and Patricia all arrived at the corner of 15th

25  and K Streets by the Bell Hotel.  Rohena had been Petitioner's

26  roomate in room four of the Bell Hotel.  Petitioner spoke with

27  Rohena, telling him that he was moving out of the Bell Hotel.

28  Patricia briefly participated in the conversation.  All of a

6                          05cv0533

1 sudden Patricia, who smelled strongly of alcohol, started asking
2 for money.   Rohena promptly walked away into the Bell Hotel, and
3 Petitioner angrily told Patricia to get away from him and to clean
4 herself up and get a job.   Petitioner testified that Patricia used
5 drugs and alcohol, panhandled for money, and was out at all hours
6 of the night.   When Petitioner told Patricia to get away from him,
7 she walked away and went to a nearby liquor store.

8         After Petitioner's sisters and some friends helped him move
9 to the Center City Hotel, Petitioner returned to the Bell Hotel at
10 about 7:00 p.m. to retrieve some property he had forgotten in his
11 room.   Between 7:00 and 7:30 p.m., he was standing outside the
12 Bell Hotel talking to Rohena.   He saw Patricia come around the
13 corner from the other side of the hotel, where she was talking to
14 other people, including a "Black guy."   Patricia came and spoke to
15 Rohena.   She then went and smoked rock cocaine with a "Black guy"
16 who was a drug dealer and whose name was A.C., or A.P., or Wil-
17 liam.   This was the last time Petitioner saw Patricia on the night
18 of March 21, 2003.   Petitioner testified that he never touched or
19 hit Patricia, and he did not have sex with her.

20         After finishing his conversation with Rohena at about
21 7:30 p.m., Petitioner left the area and took the trolley back to
22 the Center City Hotel.   He stayed in his room about ten to twenty
23 minutes, and then went to his sister's residence at another down-
24 town hotel near First Avenue and Broadway, and stayed there for
25 about five or ten minutes.   Next, he took the bus and trolley to
26 Chula Vista, arriving at the Christ Missionary shelter at about
27 8:00 p.m.   From Chula Vista, he was transported in a van to North-
28 ern San Diego County to solicit funds for the charity.   He worked

1   from about 8:30 p.m. until about 9:15 p.m., and arrived back at

2   the Christ Missionary shelter at about 9:40 p.m.  He then took the

3   trolley and bus and returned to his sister's hotel room at about

4   10:00 p.m.  He ate dinner at his sister's hotel room and stayed

5   there the rest of the night.

6        Petitioner called several witnesses, including his sister

7   and a work colleague, to corroborate his alibi defense and to

8   confirm that the Bell Hotel was in an area rampant with prostitut-

9   ion and illegal drug usage.

10                   **II. STANDARD OF REVIEW**

11  **A. Overview**

12       Federal habeas corpus relief shall only be granted in order

13  to remedy violations of the Constitution or laws or treaties of

14  the United States.[2]  *Estelle v. McGuire,* 502 U.S. 62, 68(1991).  A

15  state's interpretation of its laws or rules provides no basis for

16  federal habeas corpus relief because no federal constitutional

17  question arises.  *Estelle*, 502 U.S. at 68 (1991) (federal habeas

18  corpus relief does not lie for errors of state law, and federal

19  courts may not reexamine state court determinations on state law

20  issues).

21       For petitions filed after April 24, 1996, federal habeas

22  corpus relief is limited by an amendment to 28 U.S.C. §2254 which

23  was enacted as part of the Antiterrorism and Effective Death

24  Penalty Act of 1996 ("AEDPA").  As amended, 28 U.S.C. §2254

25  ────────────
    [2]
26  28 U.S.C. § 2254(a) provides in pertinent part:The Supreme Court, a
    Justice thereof, a circuit judge, or a district court shall entertain an
    application for a writ of habeas corpus in behalf of a person in custody
27  pursuant to the judgment of a State court only on the ground that he is in
    custody in violation of the Constitution or laws or treaties of the United
28  States.

1   (d)provides:

2           (d) An application for a writ of habeas corpus on
            behalf of a person in custody pursuant to the judgment
3           of a State court shall not be granted with respect to
            any claim that was adjudicated on the merits in State
4           court proceedings unless the adjudication of the claim:
            (1) resulted in a decision that was contrary to, or
5           involved an unreasonable application of, clearly
            established Federal law, as determined by the Supreme
6           Court of the United States
            (2) resulted in a decision that was based on an unrea-
7           sonable determination of the facts in light of the
            evidence presented in the state court proceeding

8

9   28 U.S.C. §2254 (d) (West. Supp 2006); *Lindh v. Murphy*, 521

10  U.S. 320 (1997).  To obtain federal habeas relief, a peti-

11  tioner must satisfy either §2254 (d)(1) or §2254 (d)(2).

12  *Williams*, 529 U.S. at 403.

13  **B. §2254 (d)(2)**

14       With regard to factual determinations, 28 U.S.C.

15  § 2254(e)(1), as amended, provides that "[A] determination of

16  a factual issue made by a State court shall be presumed to be

17  correct." *Tinsley v. Borg*, 895 F.2d at 524-26.  Petitioners

18  have "the burden of rebutting the presumption of correctness

19  by clear and convincing evidence."   28 U.S.C. § 2254(e)(1);

20  *See also Parke v. Raley*, 506 U.S. 20, 26 (1992); *Sumner v.*

21  *Mata*, 449 U.S. 539, 545-47 (1981) (stating that deference is

22  owed to findings of both state trial and appellate courts).

23  **C. §2254 (d)(1)**

24       When a petitioner does not challenge the state court's

25  determination of the evidence, he may receive relief only if he

26  establishes that the state-court decisions were "contrary to, or

27  involved an unreasonable application of, clearly established

28  Federal law." *See Price v. Vincent*, 538 U.S. 634 (2003).  "Clear-

ly established Federal law" only includes United States Supreme
Court holdings, not dicta or circuit court authority, from the
time the state court rendered its decision. *See Williams v.
Taylor*, 529 U.S. 362, 412 (2000); *See also Lockyer v. Andrade*, 538
U.S. 63, 71-72(2003). Furthermore, only some Supreme Court
holdings are relevant as holdings which do not bind the state
courts, such as an application of the Supreme Court's supervisory
power are "off the table" for AEDPA purpose. *Early v. Packer,* 537
U.S. 3, 10 (2002).

While the "contrary to" and "unreasonable application"
prongs of §2254(d)(1) have different meanings, the two concepts
overlap and it is sometimes necessary to test a petitioner's
allegations against both standards. *Van Tran v. Lindsey*, 212F.3d
1143, 1150 (9th Cir. 2000), overruled on other grounds, *Lockyer*,
538 U.S. at 75-76. A state court's decision is "contrary to"
clearly established Supreme Court precedent if it applies a rule
that contradicts the governing law set forth by the Supreme Court
or if it confronts a set of facts that are materially indistin-
guishable from a Supreme Court decision and nevertheless arrives
at a different result. *Williams,* 529 U.S. at 405-06; *Andrade*, 538
U.S. at 72-75.

A state court decision involves an "unreasonable applica-
tion" of clearly established federal law under §2254(d)(1) if the
state court identifies the correct governing legal rule from the
Supreme Court's cases but unreasonably applies it to the facts of
the particular state prisoner's case, or, if the state court
either unreasonably extends a legal principle from the Supreme
Court precedent to a new context where it should not apply or

1  unreasonably refuses to extend that principle to a new context
2  where it should apply.  *Williams*, 529 U.S. at 407; *Andrade*, 538
3  U.S. at 76.  "[A] federal habeas court may not issue the writ
4  simply because the court concludes in its independent judgment
5  that the relevant state-court decision applied clearly established
6  federal law erroneously or incorrectly. . . . Rather, that applica-
7  tion must be objectively unreasonable."  *Andrade*, 538 U.S. at 76
8  (internal quotation marks and citations omitted).

9       Where there is no reasoned decision from the state's
10  highest court, the Court must "look[] through" to the underlying
11  appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-
12  06 (1991).  If the dispositive state court order does not "furnish
13  a basis for its reasoning," federal habeas courts must conduct an
14  independent review of the record to determine whether the state
15  court's decision is contrary to, or an unreasonable application of
16  clearly established Supreme Court law.  *See Delgado v. Lewis*, 223
17  F.3d 976, 982 (9th Cir. 2000) (overruled in part by *Andrade*, 538
18  U.S. at 74-77).

19       Because Petitioner has not challenged the State court's
20  factual determinations, the Court must identify, pursuant to 28
21  U.S.C. § 2254(d)(1), whether the state court decisions contravened
22  or unreasonably applied "clearly established federal law". *Price*,
23  538 U.S. 634; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.
24  2003); *Delgado v. Lewis*, 23 F.3d 976, 981-82 (9th Cir. 2000).
25  ///
26  ///
27  ///
28  ///

1                                    **IV. DISCUSSION**

2    **A.   Untimely Disclosure of Evidence**

3              **i.   Consent Note**

4         Petitioner represented himself at trial.  (Resp's Lodgment

5    No. 3 at 10-13)  His primary theory of defense was that Patricia

6    misidentified him as the assailant and he was not in the area at

7    the time of the assault.  *Id.*  Petitioner, who is Black, asserted

8    that if Patricia was raped, she was raped by another Black male

9    with whom she had been talking and smoking rock cocaine on the

10   night of the assault.  *Id.*  During pretrial discovery, Petitioner

11   requested, and the court ordered, disclosure of notes made by

12   police officers during witness interviews and DNA notes prepared

13   by the police department criminalists.  During the trial, the

14   parties discovered that some of these notes had not been dis-

15   closed.  *Id.*  Upon this discovery, the notes were turned over to

16   Petitioner.  *Id.*

17        Petitioner discovered the existence of the undisclosed

18   police investigative notes during the prosecution's case-in-chief.

19   *Id.*  The revelation regarding these undisclosed notes occurred

20   while Petitioner was examining Officer John Serrano on Thursday,

21   November 20, 2003.  *Id.*  When the existence of the officer's notes

22   was revealed, Petitioner requested, and the court granted, a

23   recess to allow Hayes to review the notes.  *Id.*  After the recess,

24   the court expressed its displeasure with the prosecution's failure

25   to disclose the notes during discovery and asked Petitioner what

26   he wanted to do about the late disclosure.  *Id.*  The court offered

27   to allow Petitioner to delay his cross-examination of Officer

28   Serrano until the next court date so that he would have more time

1  to review Serrano's notes.  *Id.*  Instead, Petitioner requested

2  that he be allowed to continue his examination of Officer Serrano

3  so that the Officer could assist him with understanding the notes.

4  *Id.*

5     Petitioner proceeded to examine Officer Serrano about his

6  notes.  One of Officer Serrano's notes consisted of three nota-

7  tions set forth in a list, with the third notation stating: "#3 I

8  was there.  It was consensual." *Id.*  Officer Serrano testified

9  that he thought the note consisted of a list of questions he

10  wanted to ask regarding the case, but he could not remember what

11  the third notation as about.  *Id.*  He testified that the only

12  persons he interviewed were hotel manager Grant and the victim

13  Patricia; he did not think the third notation referred to anything

14  specific that anybody told him; and he did not know "where [he]

15  got that statement [in notation number three] from."  *Id.*

16     Other than Petitioner's request to examine Officer Serrano

17  regarding the contents of the notes, Petitioner did not make any

18  further requests for relief arising from the late discovery of the

19  Officer's notes until he filed an unsuccessful Motion for a New

20  Trial after the jury found him guilty.  *Id.*

21     In Petitioner's July 16, 2007 Motion for New Trial, Peti-

22  tioner, now represented by counsel, argued that the note referring

23  to a consensual encounter constituted exculpatory evidence sup-

24  porting a defense of consent.  *Id.*  He contended that if he had

25  been provided Officer Serrano's notes before trial, he would have

26  developed a consent defense.  *Id.*  He asserted it was likely the

27  person observed by Patricia standing by the fence during the

28  sexual encounter was an eyewitness who made the statement regard-

1   ing consent, and he would have had his investigator find this
2   eyewitness.  *Id.*  Further, he would have presented evidence that
3   Patricia traded sex for drugs, money, or alcohol.  *Id.*  To explain
4   Patricia's facial injuries, he would have presented evidence from
5   two police officers to support a theory that Patricia's boyfriend
6   was a violent drug addict who abused her.  *Id.*  He asserted the
7   late disclosure of the consent note compromised his effective
8   presentation of a consent defense because by the time of the
9   disclosure, he had already cross-examined Patricia on his misiden-
10  tification defense.  *Id.*  He claimed that if he had known about
11  the consent note prior to trial, he would have sought to create a
12  reasonable doubt of guilt by focusing on the eyewitness who
13  described a consensual encounter plus Patricia's history of
14  trading sex for drugs, alcohol, or money.  *Id.*  Petitioner also
15  stated that if he had known about the consent note, he would not
16  have himself testified and he would not have presented his alibi
17  defense.  *Id.*

18      The trial court agreed there was a discovery violation that
19  should not have occurred.  *Id.*  However, the trial court concluded
20  that a new trial was not warranted.  *Id.*  The trial court reasoned
21  that it gave Petitioner the opportunity during the trial to
22  request relief based on the late disclosure of the consent note,
23  and Petitioner did not ask for a mistrial based on the consent
24  note, but only asked for additional time.  *Id.*  The trial court
25  noted it gave Petitioner time to review the note, and it would
26  have given Petitioner as much time as he wanted if he had asked
27  for it.  Further, at the time of the disclosure, Patricia was
28  still subject to recall and Petitioner had not yet testified.  *Id.*

1   As to the issue of additional investigation that might have
2   occurred, the trial court stated that based on its discussion with
3   Petitioner at various points regarding his defense, the trial
4   court was satisfied a full investigation had been made as to all
5   possible defenses.  *Id.*  The trial court ascertained that Peti-
6   tioner could have presented a consent defense if he had wanted to,
7   and that he made a tactical decision not to do so.  The trial
8   court concluded that even if the consent note had been disclosed
9   prior to trial, there was no reasonable probability the outcome
10  would have been different.  *Id.*

11      In Petitioner's appeal of his convictions, Petitioner again
12  argued that the untimely disclosure of the consent note impaired
13  his Due Process right to a fair trial.  (Petition at 6-15.)  He
14  argued that by the time the notes were discovered it was too late
15  for him to switch to a consent defense because he would have lost
16  credibility with the jury. (Resp's Lodgment No. 3 at 10-13.)
17  Petitioner's appeal was denied.  Ground One of his Petition to
18  this Court essentially asserts the same argument he made in the
19  Court of Appeal with respect to the consent note.  (Petition 6-
20  15.)

21      The Due Process clause requires the prosecution to disclose
22  to the defense any evidence that is material either to guilt or to
23  punishment.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987);
24  *United States v. Bagley*, 473 U.S. 667, 674 (1985); *United States*
25  *v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982); *Brady v. Maryland*,
26  373 U.S. 83, 87 (1963).  Evidence is material if, "there is a
27  reasonable probability that, had the evidence been disclosed to
28  the defense, the result of the proceeding would have been

1  different.  A 'reasonable probability' is a probability sufficient

2  to undermine confidence in the outcome." *Bagley*, 473 U.S. at 683.

3  Thus, under clearly established United States Supreme Court law,

4  there are three components of a *Brady* violation: "The evidence at

5  issue must be favorable to the accused, either because it is

6  exculpatory, or because it is impeaching; that evidence must have

7  been suppressed by the State, either willfully or inadvertently;

8  and prejudice must have ensued." *See Strickler v. Greene*, 527

9  U.S. 263 (1999).

10      In the present case, the first two components of a *Brady*

11  violation have been met.  The undisclosed consent note is favor-

12  able to Petitioner because it provides support for a possible

13  consent defense.  Furthermore, the consent note was in fact either

14  purposefully or inadvertently suppressed by the prosecutor.  Thus,

15  it is the third element, whether the untimely disclosure resulted

16  in prejudice to Petitioner, which is at issue.

17      The California Court of Appeal addressed this issue in its

18  analysis.  The court stated that it was required to "determine

19  whether the failure to disclose undermines confidence in the

20  outcome of the trial." (Resp's Lodgment No. 4 at 12).  The court

21  stated that, while at the time the notes were discovered, Peti-

22  tioner had already examined witnesses on the issue of

23  misidentification, "there was nothing to prevent [Petitioner] from

24  also presenting a consent defense." *Id*. at 15.  The court further

25  found that, even if Petitioner had wanted to rely *solely* on a

26  consent defense once he discovered the consent note, he could have

27  asked the trial court for a mistrial. *Id*. at 16.  The court also

28  noted that, while Petitioner argued that he did move for a mis-

1   trial before the verdict was rendered, the trial record indicated

2   that Petitioner's request for a mistrial was based solely on the

3   late discovery of the erroneous reference to "William[]" in the

4   transcript of Patricia's recorded interview with the police.[3]  *Id.*

5   at 16.  Petitioner now contends that the Court of Appeal "underes-

6   timated the deleterious effect upon Petitioner which would have

7   flowed from the loss of credibility he invariably would have

8   suffered had he shifted to a consent theory after already commit-

9   ted [sic] himself to a misidentity/alibi theory."  (Petition at

10  12.)  This argument reveals that Petitioner fails to understand

11  the Court of Appeal's analysis.  At no point did the Court of

12  Appeal deny that Petitioner may have lost credibility with the

13  jury had he shifted his theory of defense to a consent theory.

14  (Lodgment No. 4 at 7-18.)  Instead, the Court of Appeal emphasized

15  that, when the notes were discovered, Petitioner had at least two

16  options available to him which would have allowed him to compen-

17  sate for the untimely disclosure: 1) he could have used alterna-

18  tive theories of defense, thus incorporating both the

19  misidentity/alibi theory and the consent theory or, 2) he could

20  have moved for a mistrial.  *Id.*  The Court of Appeal concluded

21  that Petitioner's failure to take advantage of the latter option

22  "creates a strong inference that he did not want to abandon [the

23  misidentity/alibi] defense and place complete reliance on a con-

24  _____

[3]
25  Petitioner contends that the Court of Appeal erred in concluding that his
    motion for a mistrial was unrelated to the untimely disclosure of the
26  detective's notes.  *Id.*  He claims that his request for a mistrial was based
    on "the combined effect of *both*" the delayed disclosure of the detectives
27  notes and an alteration of the transcript of Patricia's taped interview.
    *Id.*  This contention is without merit.  A review of the trial record clearly
    reveals that Petitioner's request for a mistrial was based solely on the
28  alterations of the transcript of Patricia's taped interview.  (Resp's Supp.
    Lodgment No. 2 at 1256-1262).

1   sent defense. *Id*. at 16.  The Court of Appeal concluded that "the
2   late disclosure of the consent note did not interfere with Peti-
3   tioners selection of defense strategies". *Id*.  This conclusion is
4   also in accordance with the trial judge's determination that the
5   untimely disclosure of Detective Serrano's notes "did not effect
6   (sic) the outcome of the case." (Resp's Supp. Lodgment No. 2 at
7   2112.)  Petitioner does not present any argument which would lead
8   the Court to conclude that both the trial and appellate courts'
9   determinations regarding this matter were unsound.  The Court
10  finds that the late discovery of the consent note did not result
11  in any prejudice to Petitioner.

12        **ii. Report note**

13        Petitioner also raises what could be perceived as a sepa-
14  rate issue in his Petition. *Id*. at 14.  He indicates that the
15  late-discovered detective's notes also contained a note containing
16  the phrase  "I didn't Report on time," which Petitioner indicates
17  was made by Patricia to Detective Serrano. *Id*. at 14.  Peti-
18  tioner's purpose in referencing the note is not entirely clear.
19  However, the Court, constituting the Petition liberally, assumes
20  that Petitioner's discussion of this note was meant to be a sepa-
21  rate claim.  The Court surmises that Plaintiff's arguments are
22  that the note could have been used to impeach Patricia's testimony
23  regarding her account of the events on the night in question and
24  the late discovery of the note resulted in a *Brady* violation.
25  (Petition at 14, 28-29.)

26        Much to Petitioner's chagrin, this claim has not been
27  exhausted in the state courts because his appellate counsel re-
28  fused to raise the issue and the appellate court would not allow

1 | him to file a *pro se* supplemental brief in which, as he now indi-
2 | cates, he would have raised the issue himself. (Resp's Supp.
3 | Lodgment No. 4)(Petition 28-29.) Regardless, the claim can be
4 | summarily dismissed on the merits because the untimely disclosure
5 | of the report note did not result in any prejudice to Petitioner.
6 | As the Court of Appeal recognized, at the time the notes were
7 | discovered, Patricia was still subject to recall. (Resp's Lodg-
8 | ment No. 3 at 10.) Furthermore, it would not have prejudiced
9 | Petitioner or otherwise negatively affected his defense had he
10 | recalled Patricia because the evidence he presented already laid a
11 | foundation for questioning her credibility. (Lodgment No. 3 at
12 | 13.) Specifically, Petitioner's examination of the witnesses up
13 | to the point when the notes were discovered touched upon theories
14 | of defense, which indicated that there were discrepancies in
15 | Patricia's story which cast doubt upon the veracity of her assault
16 | claim and that she was not a credible person. *Id.* Thus, at the
17 | time the report note was discovered, Petitioner still had the
18 | opportunity to use it for impeachment purposes and it was consis-
19 | tent with testimony he had already presented to the jury. There-
20 | fore, the Court finds that Petitioner suffered no prejudice as a
21 | result of the untimely disclosure of the report.

22 | **iii. Conclusion**

23 | In sum, in Ground One of the Petition, Petitioner does not
24 | cite any authority and does not present any legitimate arguments
25 | which would lead the Court to conclude that the Court of Appeal's
26 | decision regarding Officer Serrano's notes contravened or unrea-
27 | sonably applied the Supreme Court precedent established in *Brady*.
28 | Therefore, the Court finds that Ground One of the Petition fails.

1  Therefore, the Court RECOMMENDS that the Petition is this regard

2  be DENIED.

3  **B. Participation in Appellate Review**

4        In Ground Two, Petitioner claims that his right to due

5  process was infringed because he was deprived of the "fundamental

6  liberty interest to participate in the [sic] gain access to appel-

7  late review process" (Petition at 16.)  Petitioner argues that,

8  while his case did go through the state appeals process, there

9  were multiple issues which his appellate counsel declined to raise

10 and which he was not allowed to raise himself (Petition at 16-22).

11 In fact, Petitioner filed a Motion for Leave to File a Pro Se

12 Supplemental Opening Brief (Resp's Supp. Lodgment No. 3.) His

13 Motion was denied by the Court of Appeal because appellants have

14 no right to self-representation in criminal appeals. [Respondent's

15 Lodgment No. 4 (citing *In Re Martinez v. Court of Appeal, Fourth*

16 *District* 228 U.S. 152 (2000)]

17       While an accused has the authority to make certain funda-

18 mental decisions regarding his case, the Constitution does not

19 require appointed counsel to raise every nonfrivolous claim re-

20 quested by the client.  *See Jones v. Barnes*, 463 U.S. 745, 751-753

21 (1983) (recognizing that "a brief that raises every colorable

22 issue runs the risk of burying good arguments").  Accordingly, the

23 fact that Petitioner's counsel refused to raise potentially legit-

24 imate claims on appeal was not contrary to or an unreasonable

25 application of the established federal law.  Therefore, the Court

26 finds that, under Ground Two of the Petition, Petitioner states no

27 grounds upon which habeas corpus relief can be granted.

28

**C. Ineffective Assistance of Counsel**

    **i. Background**

The Court of Appeal appointed an attorney to represent Petitioner. (Lodgment No. 1.)  In Petitioner's February 22, 2005 opening brief, Petitioner's appellate attorney argued that Petitioner's Fourteenth Amendment Due Process right to a fair trial was violated due to (1) the prosecution's failure to timely disclose Officer Serrano's notes. Specifically, he argued that the "consent" note prevented Petitioner from presenting a consent theory of defense, and (2) the prosecution's untimely disclosure of police lab bench notes prevented the independent testing of DNA evidence by Petitioner's expert.  *Id.*

On April 1, 2005, Petitioner filed a Motion for Leave to file a *Pro Se* Supplemental Opening Brief and a Request for Adequate Time for Preparation of the Supplemental Brief. (Resp's Supp. Lodgment No. 3.)  Petitioner also filed a Request for an Order for Law Library Access and an Order for an Extra Two Hours Law Library Time.  *Id.*  On April 8, 2005, the Court of Appeal denied both motions because appellants have no right to self-representation in criminal appeals. (Resp's Supp. Lodgment No. 4 (citing *In Re Martinez,* 228 U.S. 1520))

On February 1, 2006, Petitioner filed a Petition with the California Supreme Court for review of the Court of Appeal's denial of his Motion and Request.  (Resp's Supp. Lodgment No. 4.)  On April 12, 2006 his Petition was denied without explanation. (Resp's Supp. Lodgment No. 5.)

On April 17, 2005, Petitioner filed a Petition for Writ of Habeas Corpus in the Court of Appeal.  (Resp's Supp. Lodgment No.

5.)  Petitioner asked the court to reconsider its decision on the
Motion and Request.  Petitioner claimed that the court's refusal
to grant the Motion and Request deprived him of his "Due Process
Fundamental interest to participate in gaining access to Appellate
review of [his] meritorious arguable issues." *Id.*  On May 18,
2005, the court denied his Petition.  (Respondent's Lodgment No.
6.)

On June 13, 2005 Petitioner filed a Petition for Writ of
Habeas Corpus in the California Supreme Court (Resp's Supp. Lodg-
ment No. 7.)  In this Petition, he asserted the same issue he
asserted in his Petition for Writ of Habeas Corpus filed in the
Court of Appeal, that the Motion and Request should not have been
denied.  *Id.*  On May 10, 2006 his Petition was denied.  (Resp's
Supp. Lodgment No. 8.)

December 29, 2005 the Court of Appeal affirmed his convic-
tions. (Resp's Supp. Lodgment No. 3.)  The Court of Appeal agreed
with the trial court that the untimely disclosure of the detec-
tive's notes did not deprive Petitioner of a fair trial.  *Id.* at
7-18.  The Court of Appeal also found that the untimely disclosure
of the DNA notes did not constitute a Due Process violation.  *Id.*
at 18-21.

On May 12, 2006 Petitioner again filed a Petition for Writ
of Habeas Corpus in the Court of Appeal.  (Resp's Supp. Lodgment
No. 9.)  Petitioner raised multiple claims of ineffective assis-
tance of appellate counsel.  *Id.*  On July 7, 2006, the Court of
Appeal, citing *In re Hillery*, 202 Cal. App. 293, 294 (2003),
denied the Petition because it was not brought in the Superior
Court in the first instance.  (Resp's Supp. Lodgment No. 10.)  On

1 July 18, 2006, Petitioner filed a Petition for Writ of Habeas

2 Corpus in the California Supreme Court. (Resp's Supp. Lodgment

3 No. 11.) On February 7, 2007 the California Supreme Court denied

4 this Petition as well, citing *In re Clark,* 5 Cal.4th 750 (1993),

5 and *In re Miller*, 17 Cal.2d 734 (1941). (Resp's Supp. Lodgment

6 No. 12).

7    **ii. Specific Claims of Ineffective Assistance of Counsel**

8    In Ground Three of his Petition to this court, Petitioner

9 again claims he received ineffective assistance of his appointed

10 appellate counsel ("IAC"). (Petition at 23-44.) The Court inter-

11 prets the somewhat imprecise Petition to comprise six separate

12 claims: (1) failure to challenge the trial court's denial of

13 Petitioner's request for advisory counsel or a "language inter-

14 preter" at the preliminary hearing; (2) failure to challenge the

15 trial court's rulings related to third party culpability evidence

16 and evidence related to Patricia's credibility; (3)failure to

17 raise the issue of the untimely discovered note containing the

18 phrase "I didn't report on time," which was apparently made by

19 Patricia, and which Petitioner argues he would have used to im-

20 peach Patricia's testimony; (4) failure to challenge the police

21 investigation of the crimes; (5) failure to challenge the prosecu-

22 tor's deliberate concealment of the address of potential witness

23 Robert Rohena from Petitioner; and (6)failure to conduct an inves-

24 tigation on newly discovered evidence in support of a habeas

25 petition or to assist in filing such a petition. *Id.*

26 ///

27 ///

28

### iii. Procedural Default Doctrine

Respondent contends that Ground Three is procedurally defaulted by virtue of the California Supreme Court's denial of the claim with citations to *In re Clark* 5 Cal.4th 750, and *In re Miller*, 17 Cal.2d 734.  (Answer at 23-26.)  Respondent argues that these citations indicate that the California Supreme Court denied this claim on the basis of both untimeliness and because it was successive, and that such a procedural bar is independent of federal law and adequate to bar federal review because it is firmly established and regularly applied.  *Id.*

The procedural default doctrine has its roots in the adequate and independent state law doctrine, which provides that the United States Supreme Court lacks jurisdiction to review a judgment of a state court which rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  Because the resolution of a federal claim would not affect a state court judgment which rests on a ground independent of the federal claim, the Supreme Court would in effect be issuing an advisory opinion in addressing the federal claim, something that court lacks jurisdiction to do.  *Id.*

The adequate and independent doctrine has been extended to federal habeas actions, but applies in a somewhat different manner because a federal habeas court does not review a judgment of a state court, but is required to decide whether a state prisoner is in custody in violation of the federal Constitution or laws or treaties of the United States. *Id.* at 729-30.  When the "adequate and independent ground" for a state court's rejection of a federal

1    claim involves a violation of state procedural requirements, a
2    habeas petitioner is said to have procedurally defaulted his
3    claim, and this Court cannot reach the merits of the federal
4    claim.  *Id.*  To do so would not only be an end run around the
5    limitation on direct review by the Supreme Court, but would also
6    permit avoidance of the exhaustion requirement and infringe upon
7    "the States' interest in correcting their own mistakes."  *Id.* at
8    730-32.

9         However, "a procedural default does not bar consideration
10   of a federal claim on either direct or habeas review unless the
11   last state court rendering a judgment in the case clearly and
12   expressly states that its judgment rests on a state procedural
13   bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989).  Additionally,
14   the Court may still reach the merits of a procedurally defaulted
15   claim, but only if the petitioner can demonstrate cause for the
16   procedural default and actual prejudice therefrom, or if the
17   failure of the Court to review the claim would result in a funda-
18   mental miscarriage of justice.  *Coleman*, 501 U.S. at 750.

19        The citation to *In re Clark* in the California Supreme
20   Court's decision could be either an invocation of California's
21   "untimeliness bar" [*see La Crosse v. Kernan,* 244 F.3d 702, 704-06
22   (9th Cir. 2001), *In re Robbins*, 18 Cal.4th 770, 780 (1998)], or
23   the bar on successive petitions (*see In re Robbins*, 18 Cal.4th at
24   788 n.9 ("*Clark* serves to notify habeas corpus litigants that we
25   shall apply the successiveness rule when we are faced with a
26   petitioner whose prior petition was filed after the date of final-
27   ity of *Clark*.")), or, as Respondent argues, both (*In re Clark*, 5
28   Cal.4th at 797-98 ("the general rule is still that, absent justi-

1  fication for the failure to present all known claims in a single,

2  timely petition for writ of habeas corpus, successive and/or

3  untimely petitions will be summarily denied"). Although the

4  record is unclear which procedural bar the California Supreme

5  Court applied to Ground Three, as long as both procedural bars are

6  adequate and independent to uphold the judgment, the claim is

7  procedurally defaulted. *Washington v. Cambra*, 208 F.3d 832, 834

8  (9th Cir. 2000). Accordingly, the Court will undertake to deter-

9  mine whether both procedural bars are adequate and independent.

10          **iv.  Untimeliness**

11          Habeas petitions filed within 90 days after appellant's

12  reply brief on direct appeal was due are entitled to a presumption

13  of timeliness. *In re Robbins*, 18 Cal.4th at 780. Past that

14  point, "in order to avoid the bar of untimeliness, petitioner has

15  the burden of establishing either (i) absence of substantial

16  delay, (ii) good cause for the delay, which is "measured from the

17  time the petitioner or counsel knew, or reasonably should have

18  known, of the information offered in support of the claim and the

19  legal basis for the claim," or (iii) that his claims fall within

20  an exception to the bar of untimeliness." *In re Robbins*, 18

21  Cal.4th at 784-787 (citations and internal quotation marks omit-

22  ted) (The *Clark* exceptions are: (1) existence of fundamental

23  constitutional error; (2) lack of fundamental jurisdiction; (3)

24  acting in excess of all jurisdiction; and (4) change in law).

25          Even giving Petitioner the widest benefit of the doubt, it

26  is clear that he is not entitled to a presumption of timeliness.

27  *In re Robbins*, 18 Cal.4th at 780. While it is not clear from the

28  record if or when Petitioner's reply brief was filed, it is cer-

1  tain that Petitioner was aware of the basis for his claim of

2  ineffective assistance of counsel on December 29, 2005, when the

3  Court of Appeal affirmed his conviction. (Resp's Supp. Lodgment

4  No. 3.)  Nonetheless, Petitioner did not file his habeas petition

5  based on his claim of ineffective assistance of counsel with the

6  California Supreme Court until July 19, 2006, over six months

7  later. (Resp's Supp. Lodgment No. 11.)

8       Petitioner failed to establish absence of substantial

9  delay, cause for the delay or that his case fell within one of the

10  four *Clark* exceptions. "A petitioner bears the burden of *estab-*

11  *lishing*, through his or her specific allegations, which may be

12  supported by any relevant exhibits, the absence of substantial

13  delay." *In re Robbins*, 18 Cal.4th at 780.  Petitioner made no

14  effort to do so in his habeas petition to the California Supreme

15  Court. (Resp's Supp. Lodgment No. 11.)  Furthermore, the form

16  habeas petition Petitioner filed in the California Supreme Court

17  requested information explaining any delay in discovery of the

18  grounds upon which the claims were brought. (Resp's Supp. Lodgment

19  No. 11 at 6.) Petitioner indicated, "The Appellate Counsel de-

20  clined to investigate the available newly [sic] information of Mr.

21  Dixon's Declaration and other grounds that should have been raised

22  on appeal." *Id.*  Petitioner's indication in this regard merely

23  reasserted his claimed grounds for relief.  He did not provide any

24  justification for his failure to timely raise the issue in a

25  petition to the California Supreme Court, nor did he allege that

26  his claim falls within one of the *Clark* exceptions.  *Id.*

27       In sum, the Court finds that Petitioner failed to present

28  sufficient arguments in his habeas petition to the California

1   Supreme Court to avoid the bar of untimeliness.  Thus, the cita-

2   tion to *In re Clark* by the California Supreme Court was a proper

3   assertion of California's untimeliness bar.  *La Crosse*, 244 F.3d

4   at 704-06; *In re Robbins*, 18 Cal.4th at 780 and 814 n.34; *In re*

5   *Clark*, 5 Cal.4th at 767-68, 797-98.

6          **v.   Successiveness**

7          A petitioner is required to demonstrate due diligence in

8   presenting claims in a successive petition when they are based on

9   facts which could have or should have been discovered earlier.  *In*

10  *re Clark*, 5 Cal.4th 775.  "If a petitioner has reason to suspect

11  that a basis for habeas corpus relief was available but did noth-

12  ing to promptly confirm those suspicions, that failure must be

13  justified." *Id.*

14         Petitioner had ample opportunity to present his claim of

15  ineffective assistance of appellate counsel in his first habeas

16  petition to the California Supreme Court.  In that petition he

17  argued that the appellate court's denial of his motions to file a

18  *pro se* supplemental brief in which he desired to raise issues that

19  his appellate counsel refused to raise was improper.  (Resp's

20  Supp. Lodgment No. 7.)  Based on the nature of the claim, it is

21  apparent that Petitioner was aware of his own objections to the

22  quality of his appellate counsel's performance.  Furthermore, in

23  his second habeas petition to the California Supreme Court, Peti-

24  tioner failed to justify his failure to raise the issue in his

25  first habeas petition to that court.   *Id.*

26         Thus, the Court concludes that the citation to *In re Clark*

27  by the California Supreme Court was recognition of the successive

28  nature of the petition and Petitioner's failure to provide justi-

fication for not presenting the claim in his earlier petition.  *La Crosse*, 244 F.3d at 704-06; *In re Robbins*, 18 Cal.4th at 780 and 814 n.34; *In re Clark*, 5 Cal.4th at 767-68, 797-98.  Therefore, the California Supreme Court's denial of Petitioner's second habeas petition was a proper imposition of California's bar against successive petitions.

The Court must now determine whether the procedural bars of untimeliness and successiveness were "adequate and independent" so as to support a finding of procedural default in this Court.

### vi.  Clark as an Independent Procedural Bar

In *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000), the Ninth Circuit held that, prior to August 3, 1998, (the date which the California Supreme Court decided *In re Robbins*), citation by a California court to *In re Clark* when denying a federal habeas claim is not considered adequate and independent grounds upon which to rest a federal procedural default.  The *Park* Court had no occasion to reach the issue with which this Court is now faced, whether citation to that case after *In re Robbins* was decided constitute adequate and independent grounds to support a procedural default.  However, in *Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2003), the Ninth Circuit determined that invocation of California's untimeliness bar after August 3, 1998, satisfied the "independent" prong of a procedural default analysis.  *Id.* at 581.

In the present case, the rationale applied in finding the untimeliness bar to be independent of federal law is equally applicable to the successive petition bar.  *In re Robbins*, 18 Cal.4th at 788 n. 9 (indicating the court intends to strictly and regularly follow the bar on successive petitions and require

1  explanation for delay as set forth in *In re Clark* and stating that

2  "*Clark* serves to notify habeas corpus litigants that we shall

3  apply the successiveness rule when we are faced with a petitioner

4  whose prior petition was filed after the date of finality of

5  *Clark*."); *In re Clark*, 5 Cal.4th at 775 ("if a petitioner had

6  reason to suspect that a basis for habeas corpus relief was avail-

7  able, but did nothing to promptly confirm those suspicions, that

8  failure must be justified. . . . With the exception of petitions

9  which allege facts demonstrating that a fundamental miscarriage of

10 justice has occurred . . . unjustified successive petitions will

11 not be entertained on their merits"); *Bennett*, 322 F.3d at 581-582

12 (application of the fundamental miscarriage of justice exception

13 set forth in *In re Clark* is independent of federal law).

14      Accordingly, the citation to *In re Clark* here is an appli-

15 cation of an "independent" procedural bar.  However, *Bennett*

16 remanded to the district court for a determination whether the

17 rule was consistently applied so as to satisfy the "adequate"

18 prong, and assigned the State the ultimate burden of demonstrating

19 adequacy.  *Bennett*, 322 F.3d at 583.  Thus, the Court must deter-

20 mine whether Respondent has carried his burden of demonstrating

21 that the imposition of the *In re Clark* bar satisfies the "ade-

22 quate" prong of the procedural default analysis.

23      "A state procedural rule constitutes an adequate bar to

24 federal court review if it was 'firmly established and regularly

25 followed' at the time it was applied by the state court." *Poland*

26 *v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999), quoting *Ford v.*

27 *Georgia*, 498 U.S. 411, 424 (1991).  *In re Robbins* made clear that,

28 after August 3, 1998, the California Supreme Court would apply the

untimeliness bar only after determining that the petitioner had failed to establish the absence of substantial delay or good cause for the delay, and that none of the four *In re Clark* exceptions applied. *In re Robbins*, 18 Cal.4th 811-12 and 814 n. 32; *see also*, *In re Harris*, 5 Cal.4th at 825 n. 3 and 825-841 (setting forth the four *In re Clark* exceptions as (1) existence of funda-mental constitutional error; (2) lack of jurisdiction; (3) acting in excess of jurisdiction; and (4) change in law). The California Supreme Court also has made clear in *In re Robbins* that successive petitions filed after *In re Clark* was decided, with the exception of petitions which allege facts demonstrating that a fundamental miscarriage of justice has occurred, will not be entertained on their merits unless the delay is justified. *In re Robbins*, 18 Cal.4th at 787 n.9; *In re Clark*, 5 Cal.4th at 775, 797-98. A petition based on recently discovered facts is not justified if the facts could or should have been discovered earlier and peti-tioner fails to demonstrate due diligence. *In re Clark*, 5 Cal.4th at 775.

The record in this case supports a finding that, with respect to Ground Three, the California Supreme Court followed its own dictates as expressed in *In re Robbins* and *In re Clark*. The Court finds that, at the time it was applied, on February 7, 2007, well after *In re Robbins* and *In re Clark* were decided, following a delay of over a six months without adequate explanation regarding why the issue was not presented in the first habeas petition, California's untimeliness bar and its bar on successive petitions, as they were applied here, were "firmly established." *Poland*, 169 F.3d at 577; *In re Robbins*, 18 Cal.4th at 788 n.9, 811-12, 814 n.

1  34; *In re Clark*, 5 Cal.4th at 774–775.

2      However, in addition to being "firmly established" a state

3  procedural bar must also be "regularly followed" to support a

4  procedural default.  *Poland*, 169 F.3d at 577.  The Ninth Circuit

5  stated in *Bennett* that:

6          [W]e conclude that the ultimate burden of proving the
           adequacy of the California state bar is upon the
7          State of California. . . .  Once the state has
           adequately pled the existence of an independent and
8          adequate state procedural ground as an affirmative
           defense, the burden to place that defense in issue
9          shifts to the petitioner.  The petitioner may satisfy
           this burden by asserting specific factual allegations
10         that demonstrate the inadequacy of the state proce-
           dure, including citation to authority demonstrating
11         inconsistent application of the rule.  Once having
           done so, however, the ultimate burden is the state's.
12  *Bennett*, 322 F.3d at 585–586.

13      The Court finds that Petitioner has not carried his burden

14  of demonstrating that California's untimeliness bar or bar on

15  successive petitions is not regularly followed.  Thus, the burden

16  has not shifted back to Respondent.  *Id.*

17      Having found that the imposition of the procedural bars by

18  the California Supreme Court is adequate and independent, the

19  Court concludes that Ground Three is procedurally defaulted.  The

20  Court may still reach the merits of Ground Three if Petitioner can

21  establish cause and prejudice, or if a fundamental miscarriage of

22  justice will occur by this Court's failure to reach the merits of

23  the claim.  *Park*, 202 F.3d at 1150.

24      **vii. Cause**

25      The cause prong can be satisfied if Petitioner demonstrates

26  some "objective factor" that precluded him from raising his claims

27  in state court, such as interference by state officials or consti-

28  tutionally ineffective counsel.  *McCleskey v. Zant*, 499 U.S. 467,

493-94 (1991).  In *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), the Supreme Court stated:

> Although we have not identified with precision ex-
> actly what constitutes "cause" to excuse a procedural
> default, we have acknowledged that in certain circum-
> stances counsel's ineffectiveness in failing properly
> to preserve the claim for review in state court will
> suffice.  [*Murry v. Carrier*, 477 U.S. 478, 488-89
> (1986)]  Not just any deficiency in counsel's perfor-
> mance will do, however; the assistance must have been
> so ineffective as to violate the Federal Constitu-
> tion.  *Ibid*.  In other words, ineffective assistance
> adequate to establish cause for the procedural de-
> fault of some *other* constitutional claim is *itself* an
> independent constitutional claim.  And we held in
> *Carrier* that the principles of comity and federalism
> that underlie our longstanding exhaustion doctrine-
> then as now codified in the federal habeas statute,
> see 28 U.S.C. §§ 2254(b), (c)-require *that* constitu-
> tional claim, like others, to be first raised in
> state court.  "(A) claim of ineffective assistance,"
> we said, generally must "be presented to the state
> courts as an independent claim before it may be used
> to establish cause for a procedural default." *Car-
> rier*, *supra*, at 289, 106 S. Ct. 2693.

*Edwards*, 529 U.S. at 451-52.

Petitioner has not presented a separate claim of ineffec-
tive assistance of counsel based on the failure to advise him of
his rights or failure to raise that issue.  Even to the extent a
liberal construction of his pleadings in this case and in the
state court would allow the Court to read his pleadings as pre-
senting a claim of ineffective assistance on this basis, that
claim is procedurally defaulted for the same reasons discussed
above.  Thus, Petitioner cannot demonstrate cause based on his
trial or appellate attorney's performance.  *Edwards*, 529 U.S. at
453.  Furthermore, Petitioner's does not make any attempt to
establish cause in his Petition to this Court.  As such, the Court
finds that Petitioner has not demonstrated cause to excuse the
default.  *Id*. at 451-53.

**viii.    Prejudice**

To establish prejudice in the context of overcoming a procedural default, Petitioner must show not merely that the claimed errors created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his case with "error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). "Prejudice is actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998).

Petitioner was not harmed by his counsel's refusal to raise these six claim on appeal because, even on the merits, these claims would not afford Petitioner the relief he requests. The standard for assessing IAC claims was established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that *Strickland* "has long been clearly established federal law determined by the Supreme Court of the United States"). According to *Strickland*, for Petitioner to succeed on an IAC claim, he would need show *both* incompetence of counsel and prejudice. *Strickland*, 466 U.S. at 688.

Incompetency means counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. However, judicial scrutiny of counsel's performance should be highly deferential. *Id.* at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686-87. Furthermore, where the IAC claim is based on appellate counsel's failure to raise viable issues in a merits brief, a petitioner's burden is even higher. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). In such cases it is more

1    difficult for a petitioner to establish that appellate counsel was

2    incompetent because "only when ignored issues are clearly stronger

3    than those presented, will the presumption of effective assistance

4    of counsel be overcome." *Id.* (citing *Gray v. Greer*, 800 F.2d 644,

5    646 (7th Cir. 1986).

6        For IAC claims, prejudice means that "there is a reasonable

7    probability that, but for counsel's unprofessional errors, the

8    result of the proceeding would have been different.  A reasonable

9    probability is a probability sufficient to undermine confidence in

10   the outcome." *Strickland*, 466 U.S. at 694; *see also Fretwell v.*

11   *Lockhart*, 506 U.S. 364, 372 (1993).  With respect to claims of

12   ineffective assistance of *appellate* counsel, this means that a

13   petitioner must demonstrate that he would have prevailed on appeal

14   absent counsel's errors.  *Robbins*, 528 U.S. at 285 (2000) (citing

15   *Smith*, 477 U.S. at 535-36).

16       Petitioner first claims that it was error for his appellate

17   counsel to refuse to raise an issue with the trial court's denial

18   of Petitioner's request for advisory counsel at the preliminary

19   hearing.  (Petition at 25.)  However, any claim of, or refusal to,

20   appoint advisory counsel fails to state a constitutional claim

21   because there is no constitutional right to advisory counsel.

22   *Locks v. Sumner*, 703 F.2d 403, 407-408 (9th Cir. 1983).  Thus, it

23   was well within the trial court's discretion to refuse to appoint

24   advisory counsel.  Since there is no merit to the claim, Peti-

25   tioner's counsel cannot be deemed incompetent for refusing to

26   raise it as an issue on appeal.  Furthermore, no prejudice re-

27   sulted because the claim would not have been successful even if

28   Petitioner's counsel had raised the issue in his merits brief.

Petitioner next contends that his appellate counsel should have challenged the trial court's rulings related to third party culpability evidence Petitioner sought to introduce at an eviden-tiary hearing on November 12, 2003. *Id.* (Petition at 28.)  Peti-tioner does not cite to the record to identify specifically to which ruling he objects.  Petitioner does not argue how the trial court's rulings violated his Constitutional protections.  There is no indication whatsoever that the trial court made any impermissi-ble rulings on that date.  Thus, the Court concludes that Peti-tioner has not overcome the presumption of competency because he has not demonstrated that this was a viable issue on appeal.

Petitioner also contends that his appellate counsel should have presented argument with regard to the untimely disclosure of evidence related to Patricia's credibility; specifically the report note discussed previously in Ground One.  However, as discussed previously, Petitioner's arguments regarding the nega-tive impact of untimely disclosure of the report note on his trial are unpersuasive.  Furthermore, even had Petitioner's counsel raised the untimely disclosure of the report note as an issue in his merits brief, the Court of Appeal's decision would most likely not have been any different.  Since both notes were discovered at the same time, the Court of Appeal could have rejected the claim for the same reason it rejected the untimely disclosure of the consent note. That is, Petitioner had ample opportunity to request relief from the trial court had this been an issue he felt would significantly impact his trial.  Thus, the Court finds that the prejudice prong under *Strickland* has not been met.

Petitioner next contends that his appellate counsel should

1   have challenged the adequacy of police investigation of the crimes

2   of which Petitioner was charged. (Petition at 32.)  Petitioner

3   argues that his counsel should have raised the issue on appeal

4   because the "shoddy" police investigation impacted his due process

5   right to a fair trial.  *Id.*  Petitioner's appellate counsel ex-

6   plained why he did not raise this as an issue in a letter he wrote

7   to Petitioner on November 18, 2004.  (Resp's Supp. Lodgment No. 11

8   at Exhibit E.)  In that letter, he told Petitioner that the cases

9   Petitioner would rely upon do not stand for the proposition that

10  the police have an obligation to "make extraordinary efforts to

11  investigate the case, just that they cannot destroy or lose evi-

12  dence once they have obtained it."  *Id*.  Even assuming that the

13  police investigation was "shoddy," Petitioner cites no authority

14  which would lead the Court to conclude that the police had a duty

15  to investigate the crimes more thoroughly than they did.  Conse-

16  quently, the Court finds that Petitioner has not overcome the

17  presumption of competency with respect to this issue.

18       Petitioner also argues that his appellate counsel should

19  have challenged the Prosecutor's "deliberate concealment"

20  of the address of potential witness Robert Rohena from Petitioner.

21  (Petition at 35.)  He argues that because of the Prosecutor's

22  concealment, he was unable to subpoena Mr. Rohena for the purpose

23  of attacking Patricia's credibility.  However, as with the previ-

24  ous issue, Petitioner cites no authority that prosecutors have a

25  duty to investigate the location of potential defense witnesses.

26  Furthermore, even if such a duty existed, Petitioner has made no

27  showing that had the issue been raised on appeal, the result of

28  the proceeding would have been different.  Thus, the Court con-

1  cludes that neither of the *Strickland* prongs have been met with

2  respect to this issue.

3      Lastly, Petitioner contends that his appellate counsel

4  should have conducted an investigation on newly discovered evi-

5  dence in support of a habeas petition or to assist in filing such

6  a petition.  Specifically, Petitioner argues that in September

7  2004, he discovered a man by the name of Richard Dixon who re-

8  called being present in the area on the night in question and who

9  provided a declaration about Patricia's "bizarre sexual activi-

10 ties".  Petitioner brought this information to his appellate

11 counsel who refused to investigate the matter or file a petition

12 for writ of habeas corpus in the state courts based on this newly

13 discovered information.  In his November 18, 2004 letter to Peti-

14 tioner, Petitioner's appellate counsel stated that:

15         I can only file a petition for writ of habeas corpus if
           one is necessary to present an arguably meritorious
16         issue based on matters outside of the record.  While I
           have not yet made a definitive decision that no such
17         issues exist, I do not see how Mr. Dixon's declaration
           would provide a basis for obtaining relief.  First, the
18         declaration fails to explain why Dixon was not called
           as a witness during the trial.  Absent a solid reason
19         why he could not have been called at that time, it is
           highly unlikely that the appellate court would even
20         consider the substance of his declaration.  However,
           even if the court were to consider the substance, I do
21         not see how it would support any viable issues.

22 (Resp's Supp. Lodgment No. 11 at Exhibit E.)

23     Petitioner does not argue or explain how appellate

24 counsel's above rationale is invalid.  Furthermore, even if

25 there was a chance that Petitioner might have won his appeal

26 on this issue, the issue is not stronger than either of the

27 two issues Petitioner's counsel actually did raise on appeal.

28 Thus, the Court concludes that Petitioner has not overcome

1  the presumption of competency with respect to this issue.

2       In sum, since none of Petitioners IAC claims would

3  have succeeded on the merits under the *Strickland* standard,

4  the Court concludes that Petitioner is unable to overcome the

5  procedural default on the basis of prejudice.

6       **ix.  Fundamental Miscarriage of Justice**

7       The Court may also reach the merits of Ground Three

8  if Petitioner can demonstrate that the failure of the Court

9  to reach the merits of his claim would result in a fundamen-

10  tal miscarriage of justice.

11       The Supreme Court has limited the "miscarriage of

12  justice" exception to habeas petitioners who can show that "a

13  constitutional violation has probably resulted in the convic-

14  tion of one who is actually innocent." *Schlup v. Delo*, 513

15  U.S. 298, 327 (1995).  "Actual innocence" means factual

16  innocence, not merely legal insufficiency; a mere showing of

17  reasonable doubt is not enough.  *See Wood v. Hall*, 130 F.3d

18  373, 379 (9th Cir. 1997).  To show actual innocence, Peti-

19  tioner must show that it is more likely than not that no

20  reasonable juror would have found petitioner guilty beyond a

21  reasonable doubt.  *Id.*  Petitioner has failed to demonstrate

22  actual innocence, as there was overwhelming evidence of guilt

23  adduced at trial, most significantly, Patricia's accusatory

24  testimony, coupled the DNA match between Petitioner and the

25  semen found in Patricia's vagina.  (Resp's Supp. Lodgment No.

26  3 at 4.)

27       Therefore, the Court concludes that Petitioner is

28  unable to overcome the procedural default on the basis of the

existence of a fundamental miscarriage of justice.

**x.   Conclusion**

Based on the forgoing, the Court finds that Ground Three is procedurally defaulted, that Petitioner has failed to demonstrate cause and prejudice to excuse the default, and that no fundamental miscarriage of justice would result in the Court's failure to consider the merits of the claim. Accordingly, the Court recommends that habeas relief be denied as to Ground Three.

Alternately, to the extent the Court could reach the merits of Ground Three, the Court finds that Petitioner is not entitled to habeas relief for the reasons set forth above.

### V.CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice.

This report and recommendation of the undersigned Magistrate judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than <u>May 9, 2008</u>, any party to this action may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objec-tions shall be filed with the Court and served on all parties no later than <u>May 23, 2008</u>.  The parties are advised that

1  failure to file objections within the specified time may
2  waive the right to raise those objections on appeal of the
3  Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.
4  1991).

5

6

7

8  DATED:   April 10, 2008

9
                                    _____
10                                  Hon. Leo S. Papas
11                                  U.S. Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28