UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT HAYES,<br><br>                Plaintiff,<br><br>      v.<br><br>J.E. TILTON,<br><br>                Defendant. | Civil No.   07cv533 AJB(WVG)<br><br>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING A CERTIFICATE OF APPEALABILITY; DENYING PETITIONER'S MOTION FOR RULING ON PENDING OBJECTION PLEADING; DENYING PETITIONER'S MOTION TO APPOINT COUNSEL AND/OR DISCOVERY PROCESS**<br><br>**[Dkt. Nos. 70, 73.]** |

      Petitioner Albert Hayes ("Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(b)(1), Magistrate Judge Leo. S. Papas submitted a report and recommendation ("Report") recommending that the petition be denied in its entirety. Petitioner filed objections to the report and recommendation on June 1, 2009. The case was transferred to the undersigned judge on March 25, 2011. After a thorough review of the issues, the documents presented, and objections filed, the Court ADOPTS the Magistrate Judge's report and recommendation denying the petition for writ of habeas corpus. The Court also DENIES a certificate of appealability and DENIES Petitioner's motion for ruling on pending objection pleading as MOOT. Lastly, the Court DENIES Petitioner's motion to appoint counsel and/or discovery process as MOOT.

**Background**

On December 4, 2003, Petitioner represented himself at trial and was convicted by jury of one count of forcible rape in violation of California Penal Code ("Penal Code") section 261(a)(2); one count of assault with intent to commit rape in violation of Penal Code section 220; and one count of assault by means likely to produce great bodily injury in violation of Penal Code section 245(a)(1). (Notice of Suppl. Lodgment 1 at 623-24, 626.) The jury also found true all prior conviction allegations. (Id. at 632-38.)

On March 15, 2004, Petitioner, represented by counsel at this time, filed a motion for a new trial based on a claim that the prosecution failed to make timely disclosure of notes of a police detective which were favorable to the defense. (Id. at 472-80.) On March 29, 2004, the trial court denied the motion. (Id. at 642.) The trial court sentenced Petitioner to state prison for twenty-five years and enhanced his sentence by fifteen years for his three prior serious felony convictions. (Id. at 653.)

Petitioner appealed his conviction to both the California Court of Appeal and the California Supreme Court. (Lodgments 1, 4.) Both of his appeals were denied on December 29, 2005 and April 12, 2006, respectively. (Lodgments 3, 5.) Petitioner then filed a petition for writ of habeas corpus in the California Court of Appeal on April 17, 2005, which was denied on May 18, 2005. (Suppl. Lodgments 5, 6.) He filed a petition for writ of habeas corpus in the California Supreme Court on June 13, 2005 which was denied on May 10, 2006. (Suppl. Lodgments 7, 8.) Petitioner filed another petition for writ of habeas corpus in the court of appeal on May 12, 2006. (Lodgment 9.) That petition was denied on July 7, 2006. (Lodgment 10.) He then filed a petition for writ of habeas corpus in the California Supreme Court on July 19, 2006. (Lodgment 11.) The California Supreme Court denied the petition on February 7, 2007. (Lodgment 12.)

On March 21, 2007, Petitioner filed the instant petition for writ of habeas corpus in this Court. (Dkt. No. 1.) On June 25, 2007, Respondent filed an answer. (Dkt. No. 25.) Petitioner filed a traverse on April 10, 2008. (Dkt. No. 42.) On April 10, 2008, the Magistrate Judge issued a report and recommendation denying the petition for writ of habeas corpus. (Dkt. No. 41.) Petitioner filed his objections to the Report on June 1, 2009. (Dkt. No. 65.) On March 25, 2011, the case was

transferred to the undersigned judge. (Dkt. No. 71.) On May 10, 2011, Petitioner filed a motion for ruling on pending objections. (Dkt. No. 73.)

In his petition, he alleges three claims: (1) a violation of his due process rights for the prosecution's untimely disclosure of evidence; (2) a violation of his due process rights for the denial of participation in appellate review; and (3) ineffective assistance of counsel on appeal.

## Factual Background

The following factual background is taken from the Court of Appeal opinion in People v. Hayes, unpublished opinion (Cal. Ct. App., 4th Dist., Div. 1, December 29, 2005). The Court presumes these factual determinations are correct pursuant to 28 U.S.C. § 2254(e)(1).

> Patricia, a resident of Bell Hotel in downtown San Diego, testified that about 8:30 p.m. on March 21, 2003,[1] she was outside the hotel talking to a White male (Robert Rohena) and a Black male. Patricia had met Rohena before, but she had not previously met the other man. During the conversation, Patricia learned that the men had been roommates in room four of the Bell Hotel, but the Black male had just moved out of the hotel that day. After talking for about five to 10 minutes with the two men, Patricia walked down the street with the intention of panhandling for money to buy beer.
>
> When she was about a block away from the hotel, she saw the Black male again and he asked her if she wanted to smoke some "crack." Patricia walked with him for about a block, but because she started "getting some really bad vibes from him," she told him she did not "want to do that with [him]." When they reached the corner of a fence near a freeway ramp, she started "feeling really like [she] was in danger." She wanted to leave the area, but the man grabbed her hand and told her to sit down. They started arguing, and when she refused to sit down he pulled her down by the arm and slammed her to the ground. She asked, "What the hell is going on?" He told her to "[s]hut the hell up." She was resisting him, and he hit her on the face with something hard that felt like a brick or a rock. She felt that she had better do what he said or he would "do something more" to hurt her.
>
> Patricia asked if she could at least sit on a mattress that was leaning against the fence. The man pulled the mattress down to the ground and let her sit on it. He told her to pull down her pants. She complied, and the man had sexual intercourse with her. At one point during the rape, she saw someone standing by a fence on the other side of the street. She started screaming to get the person's attention. Her assailant told her to shut up and choked her until she "blanked out for a bit" and stopped yelling. After the man finished and stood up, Patricia pretended like nothing had happened because she "wanted to live." As they walked back down the street, the man stated, "You sure you don't want me to give you any money? I'll give you $100." Patricia responded, "I don't want your

---

[1]Subsequent references to dates are to the year 2003.

damn money." Prior to the rape, they had not discussed exchanging money for sex, and she did not smoke rock cocaine with him or acquire the drug from him.

The man left the area and Patricia returned to the Bell Hotel. As she walked back to the hotel, she had blood in her mouth and could feel her face swelling up. After Patricia arrived at her room and told her boyfriend what had happened, she and her boyfriend went to a hotel manager Diedre Grant's office. Patricia told Grant that she thought the person who attacked her was "that Black guy" who had just moved out of room number four. Grant showed Patricia a copy of Hayes's picture on his transit card, and Patricia stated that he was her attacker. Grant called 911.

Grant testified that about 10:30 or 11:00 p.m. on March 21, Patricia and her boyfriend came to the manager's apartment. Patricia was a "bloody mess." She was bleeding from her nose and mouth, and her face was swollen and distorted. She was crying and hysterical and told Grant she had been raped by the "Black man in room four."

After reporting the rape, Patricia was transported by ambulance to the hospital. The examining nurse testified that Patricia had "massive facial trauma," consisting of abrasions and bruising on the entire left side of her face; a laceration on the left side of her tongue consistent with having been hit in the face with a hard object such as a brick; and a vaginal laceration consistent with nonconsensual intercourse.

DNA testing revealed a match between Hayes's DNA and semen found in Patricia's vagina.

*Hayes's Defense*

Testifying on his own behalf, Hayes stated that on March 21, he was moving out of the Bell Hotel to the Center City Hotel because the Bell Hotel was plagued by drug users. Hayes testified he did not use drugs, and that he worked for an organization called Christ Missionary that solicited funds to assist the homeless and other individuals in need. At about 3:30 p.m. on March 21, Hayes left the Bell Hotel and went to a phone booth to call his sisters to ask them to come help transport his possessions to his new hotel room. After making the phone calls, at around 4:00 p.m. Hayes was walking back to the Bell Hotel when he saw Rohena walking up the street and Patricia coming out of the hotel.

Hayes, Rohena, and Patricia all arrived at the corner of 15th and K Streets by the Bell Hotel. Rohena had been Hayes's roommate in room four of the Bell Hotel. Hayes spoke with Rohena, telling him that he was moving out of the Bell Hotel. Patricia briefly participated in the conversation. All of a sudden Patricia, who smelled strongly of alcohol, started asking for money. Rohena promptly walked away into the Bell Hotel, and Hayes angrily told Patricia to get away from him and to clean herself up and get a job. Hayes testified that Patricia abused drugs and alcohol, panhandled for money, and was out all hours of the night. When Hayes told Patricia to get away from him, she walked away and went to a nearby liquor store.

After Hayes's sisters and some friends helped him move to the Center City Hotel, Hayes returned to the Bell Hotel at around 7:00 p.m. to retrieve some property he had forgotten in his room. Between 7:00 and

> 7:30 p.m., he was standing outside the Bell Hotel talking to Rohena. He saw Patricia come around the corner from the other side of the hotel, where she was talking to other people, including a "black guy." Patricia came and spoke to Rohena. She then went and smoked rock cocaine with a "Black guy" who was a drug dealer and whose name was A.C., or A.P., or William. This was the last time Hayes saw Patricia on the night of March 21. Hayes testified that he never touched or hit Patricia, and he did not have sex with her.
>
> After finishing his conversation with Rohena at around 7:30 p.m., Hayes left the area and took the trolley back to the Center City Hotel. He stayed in his room about 10 to 20 minutes, and then went to his sister's residence at another downtown hotel near First and Broadway, and stayed there about five or 10 minutes. Next, he took the bus and trolley to Chula Vista, arriving at the Christ Missionary shelter at about 8:00 p.m. From Chula Vista, he was transported in a van to northern San Diego county to solicit funds for the charity. He worked from about 8:30 p.m. until about 9:15 p.m., and arrived back at the Christ Missionary shelter at around 9:40 p.m. He then took the trolley and bus and returned to his sister's home at about 10:00 p.m. He ate dinner at his sister's home and stayed there the rest of the night.
>
> Hayes called several witnesses, including his sister and work colleague, to corroborate his alibi defense and to confirm that the Bell Hotel was in an area rampant with prostitution and illegal drug usage.

(Lodgment 3 at 2-6.)

### Discussion

**A.      Scope of Review of Magistrate Judge's Report and Recommendation**

The district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b). A district court may adopt those parts of a Magistrate Judge's report to which no specific objection is made, provided they are not clearly erroneous. Thomas v. Arn, 474 U.S. 140, 152-53 (1985).

**B.      Scope of Review of Federal Habeas Petition Pursuant to 28 U.S.C. § 2254**

28 U.S.C. § 2254(a) provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). As amended, the AEDPA now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

>claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>(1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application</u> of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). See <u>Williams v. Taylor</u>, 529 U.S. 362, 403 (2000). The threshold question is whether the rule of law was clearly established at the time petitioner's state court conviction became final. <u>Id.</u> at 406. Clearly established federal law, as determined by the Supreme Court of the United States "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003). However, Ninth Circuit case law may be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'" <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 2000). Only after the clearly established Federal law is identified can the court determine whether the state court's application of that law "resulted in a decision that was contrary to, or involved an unreasonable application of" that clearly established Federal law. See <u>Lockyer</u>, 538 U.S. at 71-72.

A state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." <u>Williams</u>, 529 U.S. at 405-406. "A state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 407. Under <u>Williams</u>, an application of federal law is unreasonable only if it is "objectively unreasonable." <u>Id.</u> at 409. Further, a state court's decision results in a "decision that was based on an unreasonable

determination of the facts in light of the evidence presented in State court proceeding" if it "is so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997) (citations omitted).

In making such a determination under AEDPA, the court looks to the state's last reasoned decision. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). A state court need not cite Supreme Court precedent when resolving a habeas corpus claim. Early v. Packer, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state court decision will not be "contrary to" clearly established federal law.

When a federal habeas court is faced with reviewing a state court denial for which there is no reasoned decision, however, the deferential standard under § 2254(d) cannot be applied because there is "nothing to which we can defer." Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002). Under such circumstances, "[f]ederal habeas review is not *de novo* . . . but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

It is only when a state court could not reach the merits of a claim (e.g. because a procedural bar prevented it) that "AEDPA's standard of review does not apply." Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002). In such cases, when it is clear that the "[state] courts did not reach the merits of [the petitioner's constitutional] claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings' "; "[i]nstead, the claim is reviewed *de novo*." Cone v. Bell, ––– U.S. ––––, 129 S. Ct. 1769, 1784 (2009) (quoting 28 U.S.C. § 2254(d)); see also Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**C.     Claim One: Untimely Disclosure of Evidence**

In the petition, Petitioner claims that the late disclosure of police notes violated his due process rights. The first piece of evidence was discovered during the prosecutor's case-in-chief which was a note by Officer John Serrano that stated, "I was there. It was consensual." (Report at

1  13.)  The second piece of evidence was also within Officer Serrano's notes which stated "I didn't
2  report on time."  (<u>Id.</u> at 18.)
3       In the Report, the Magistrate Judge concluded that the claim of the untimely disclosure of
4  evidence was not entitled to habeas relief.  Petitioner objects to the Magistrate Judge's findings and
5  contends that the Magistrate Judge erred by relying on the trial and appellate courts findings and that
6  both courts failed to weigh the prejudice to him as well as failing to consider his alternatives at trial.
7  (Pet'r Obj. at 4.)  Petitioner asserts that the Magistrate Judge should have concluded that the trial
8  court should have *sua sponte* granted a mistrial with Petitioner's permission, or in the alternative,
9  consulted with Petitioner regarding the proper course of action.  (<u>Id.</u>)  As to the second piece of
10 evidence, Petitioner argues that the Magistrate Judge erred by adopting the appellate court's findings
11 that the victim was subject to recall.  (<u>Id.</u>)  Petitioner also argues that the information was necessary
12 to prepare his defense and if he had been given the evidence prior to trial he would have prepared his
13 defense differently.  (<u>Id.</u> at 8.)
14       Under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the United States Supreme Court held that
15 the "suppression by the prosecution of evidence favorable to an accused upon request violates due
16 process where the evidence is material either to guilt or to punishment, irrespective of the good faith
17 or bad faith of the prosecution."  <u>Id.</u> at 87.  In order to show a <u>Brady</u> violation, first, the evidence
18 must be favorable to the accused because it is either exculpatory or impeachment material.  <u>Strickler</u>
19 <u>v. Greene</u>, 527 U.S. 263, 280 (1999).  Second, the evidence must have been either willfully or
20 inadvertently suppressed by the State and third, there must be prejudice from the failure to disclose
21 the evidence.  <u>Id.</u> at 281-82.  In a case of the late disclosure of favorable evidence, the court looks at
22 whether the evidence was revealed in time for the defendant to make use of it.  <u>Bielanski v. County</u>
23 <u>of Kane</u>, 550 F.3d 632, 645 (7th Cir. 2008) (<u>Brady</u> evidence can be handed over on the eve of trial or
24 even during trial so long as the defendant is able to use it to his or her advantage.); <u>United States v.</u>
25 <u>Warren</u>, 454 F.3d 752, 760 (7th Cir. 2006).
26      On September 29, 2003, at a pretrial discovery proceeding, the court stated that Petitioner
27 was entitled to police notes.  (RT at 271-72.)  At the time, the prosecution stated that he and his
28 assistant checked with Officer Serrano about raw notes, and Serrano stated he did not have any

1 notes. (Id.) At the proceeding, the trial court directed the prosecution to contact all police officers
2 involved in the case to inquire whether any notes existed. (Id. at 273)

3 At trial, during the prosecution's case-in-chief when the defendant was cross-examining
4 Officer Serrano, it was revealed that he possessed some original notes of his interview with the
5 victim, Patricia H. (RT at 1158.) One of the entries in the note taken on March 26, 2003, stated "I
6 was there - It was consensual." (CT at 493; RT at 1188.) The notes were provided to Petitioner and
7 the court granted his request for a five-minute recess in order to examine them. (RT at 1160-61.)
8 After having reviewed the notes, Petitioner wanted to proceed and used the notes to cross-examine
9 Serrano. (RT at 1167-69; 1217-18.) Serrano testified that he thought the note consisted of a list of
10 questions, he wanted to ask about the case but could not specifically remember about the statement
11 at issue. (Id.) He testified that he only interviewed the hotel manager and the victim. (Id.) He did
12 not think the statement at issue referred to anything specific that anybody told him and he did not
13 know where he got that statement from. (Id.)

14 The issue as correctly determined by the Magistrate Judge is whether there was prejudice
15 from the failure to disclose the evidence. The court of appeal agreed that a discovery violation
16 occurred but concluded that a new trial was not warranted because if the consent note had been
17 disclosed prior to trial, there was no reasonable probability the outcome of the trial would have been
18 different. (Lodgment 3 at 9-10.) The court of appeal held that the "late disclosure of these items did
19 not diminish Hayes's opportunity to develop and present the jury with a consent defense or
20 otherwise interfere with his ability to control selection of his defense strategy." (Id. at 2.) The court
21 of appeal provided a detailed explanation as to why the late disclosure of the note was not
22 prejudicial and why the defendant was not precluded from bringing up alternative theories for his
23 defense. (Id. at 13.) The court explained that when the existence of the note was revealed,
24 Petitioner had not presented his opening statement to the jury, had not himself testified and had not
25 called his alibi witnesses. (Id. at 13-15.) Therefore, Petitioner had the option to either present a
26 consent defense or move for a mistrial. (Id. at 16.) However, the defendant did not take advantage
27 of either option. (Id. at 17.)

28 As to the second note, which stated, "I didn't Report on time," (Pet. at 7-a.), the Magistrate

Judge found the claim had not been exhausted because his appellate counsel refused to raise the issue and he was not allowed to file a supplemental appeal with the appellate court. (Report at 19.) Petitioner claims the note creates an inference of a lapse of time that could have raised doubt as to the victim's story. (Pet. at 5-c to 6-c.) Analyzing the claim on its merits, the Magistrate Judge found the late disclosure did not result in any prejudice to Petitioner. (Id.) The evidence could have been used to impeach the victim's testimony. (Id.) Petitioner had laid the foundation to challenge her credibility and he had already cast doubt upon her credibility. (Id.) Therefore, at the time of discovery of the note, Petitioner had the opportunity, by recalling the victim, to use the note for impeachment purposes and its use would have been consistent with testimony he had already presented to the jury. (Id.)

Once the disclosure of the notes was revealed, Petitioner had the opportunity to move for a mistrial or use the evidence later in the trial by recalling the victim to impeach her further or by bringing up a consent defense. However, he failed to do so. Petitioner's contentions that the court should have *sua sponte* granted a mistrial or discussed the option with Petitioner, does not find support in case law, and therefore, Petitioner was not prejudiced by the late disclosure. See Strickler, 527 U.S. at 281.

Accordingly, the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law." See 28 U.S.C. § 2254(d)(1). The Court ADOPTS the Magistrate Judge's findings and conclusions that Petitioner is not entitled to habeas relief on the claim of the late disclosure of police notes.

**D.     Claim Two:  Denial of Appellate Review Process**

Petitioner claims he was denied the "fundamental liberty interest to participate in the [sic] gain access to appellate review process." (Pet. at 16.) He argues that while his case went through the state appeals process, his appellate counsel declined to raise multiple issues. (Id. at 16-22.) Since appellate counsel failed to raise issue on appeal, Petitioner filed a motion for leave to file a *pro se* supplemental opening brief in the court of appeal. (Suppl. Lodgment 3.) The court of appeal denied his motion because he does not have a right to self-representation in criminal appeals. (Suppl. Lodgment 4). The Magistrate Judge concluded that Petitioner was not entitled to habeas

1  relief because there is no "right to self-representation in criminal appeal" and appellate counsel does
2  not have to make every frivolous argument." (Report at 20 (citing Jones v. Barnes, 463 U.S. 745,
3  751-53 (1983)).

4  Since Petitioner did not file objections as to this claim, and the Magistrate Judge's analysis
5  was not clearly erroneous, the Court ADOPTS the Magistrate Judge's findings and conclusion that
6  Petitioner is not entitled to habeas relief as to his second claim for denial of the appellate review
7  process.

8  **E.  Claim Three: Ineffective Assistance of Counsel on Appeal**

9  In the petition, Petitioner argues that he received ineffective assistance of counsel when his
10 appellate counsel failed to raise certain issues on appeal. According to Petitioner, appellate counsel
11 failed to present the following allegations on appeal: 1) failed to challenge the denial of his motion
12 to dismiss the information on the ground that he was denied advisory counsel and a language
13 interpreter at the preliminary hearing when he was representing himself; 2) failed to challenge the
14 trial court's exclusion of third party culpability evidence; 3) failed to challenge the shoddy police
15 investigation of the crime; 4) failed to adequately challenge the ruling regarding the disclosure of a
16 witness address; and 5) failed to conduct an investigation on newly discovered evidence regarding
17 Dixon in support of a habeas petition or to assist in filing such a petition. (Pet. at 8, 2c-21c.)

18 In the Report, the Magistrate Judge concluded that the claim of ineffective assistance of
19 counsel was procedurally defaulted. Petitioner objects to the Magistrate Judge's conclusion arguing
20 that the claim of ineffective assistance of counsel was not procedurally defaulted.

21 The procedural default doctrine forecloses review of a state prisoner's federal habeas claims,
22 if those claims were defaulted in a state court pursuant to an independent and adequate state
23 procedural rule. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). For a state procedural rule to
24 be "independent," the state law basis for the decision must not be interwoven with federal law.
25 Michigan v. Long, 463 U.S. 1032, 1040-41 (1983); Harris v. Reed, 489 U.S. 255, 265 (1989). In
26 order for a state procedural rule to be "adequate," it "must have been 'firmly established and
27 regularly followed' by the time as of which it is to be applied." Ford v. Georgia, 498 U.S. 411, 424
28 (1991) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)). This means that the question is

1  whether the state courts were regularly and consistently applying the relevant procedural default rule
2  "at the time the claim should have been raised." Fields v. Calderon, 125 F.3d 757, 760 (9th Cir.
3  1997).

4  A state procedural bar rule is inadequate to preclude federal habeas review if the state rule is
5  not consistently applied. Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001). "In all cases
6  in which a state prisoner has defaulted his federal claims in state court pursuant to an independent
7  and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner
8  can demonstrate cause for the default and actual prejudice as a result of the alleged violation of
9  federal law, or demonstrate that failure to consider the claims will result in a fundamental
10 miscarriage of justice." Coleman, 501 U.S. at 750.

11 On February 7, 2007, the California Supreme Court denied Petitioner's habeas petition with
12 citations to In re Clark, 5 Cal. 4th 750 (1993); and In re Miller, 17 Cal. 2d 734 (1941). (Lodgment
13 No. 12.) Respondent argues that the California Supreme Court's references to In re Clark and In re
14 Miller represent the invocation of an independent and adequate state procedural bar. However, the
15 Court has the discretion to decide the case on the merits without reaching any procedural default
16 issues. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (holding that a district court may
17 address the merits without reaching procedural issues where the interests of judicial economy are
18 best served by doing so); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar
19 issues are not infrequently more complex than the merits issues presented by the appeal, so it may
20 well make sense in some instances to proceed to the merits if the result will be the same."). After a
21 review of the extensive nineteen page discussion on procedural default in the Report, the Court
22 exercises its discretion to decide Petitioner's claims on the merits without reaching any procedural
23 default issues. (See Report at 21-40.)

24 The California Supreme Court denied the petition on February 7, 2007. (Lodgment 12.)
25 Since there is no reasoned decision from the California Supreme Court, the Court "looks through" to
26 the court of appeal decision. See Ylst, 501 U.S. 801-06. On July 7, 2006, the court of appeal denied
27 the petition explaining that the claim was not first brought in the superior court. (Lodgment 10.)
28 Since the court of appeal did not reach the merits of the claim, this Court's review of the case is *de*

*novo*. See Pirtle, 313 F.3d at 1167.

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Baylor v. Estelle, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that Strickland "has long been clearly established federal law determined by the Supreme Court of the United States"); Jones v. Wood, 114 F.3d 1002, 1013 (9th Cir. 1997). A habeas petitioner must satisfy two requirements to demonstrate his assistance of counsel was so defective that habeas relief is warranted. First, the petitioner must show that counsel's performance was deficient. Strickland, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, the petitioner must show counsel's deficient performance prejudiced the defense. Id. The test for prejudice requires that the defendant show that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Id. at 694. In other words, petitioner must demonstrate his counsel's error rendered the result unreliable or the trial fundamentally unfair. Fretwell v. Lockhart, 506 U.S. 364, 372 (1993); Strickland, 466 U.S. at 694. Review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment." United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1987*);* see Strickland, 466 U.S. at 690. The question is not what defense counsel could have pursued but rather whether the choices made were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. He must "at a minimum conduct a reasonable investigation enabling him to make informed decisions about how to best represent his client." Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). "To determine the reasonableness of a decision not to investigate, the court must apply 'a heavy measure of deference to counsel's judgments.'" Babbitt, 151 F.3d at 1173.

/ / / /

////

### 1. Failure to Appeal Denial of Motion to Dismiss the Information Based on Denial of Auxiliary Aids at the Preliminary Hearing

Petitioner argues that his appellate counsel failed to challenge the trial court's ruling denying his motion to dismiss the information because Petitioner was denied auxiliary assistance in the form of an advisory counsel and oral interpreter at the preliminary hearing.[2] (Pet. at 2-c.)

Petitioner has a speech and hearing impediment. (RT at 19, 25, 165.) His hearing loss requires him to use hearing aids. (RT, vol. 2 at 168.) His hearing causes his speech impediment in the form of a hearing-impaired accent which brings forth an issue of understanding Petitioner. (RT at 26.) At the preliminary hearing, Petitioner utilized an assistive listening device.[3] (RT, vol. 2 at 168.) The trial court at the preliminary hearing was sensitive to the needs of Petitioner. The court denied Petitioner's request for an advisory counsel because an advisory counsel would not assist in areas of hearing or speaking impairments. (RT at 20; 25.) The court suggested possibly an oral interpreter and had Petitioner's impairments evaluated to accommodate Petitioner prior to being arraigned. (Id. at 21-22; 164.) The court also commented that there were only a few things that were difficult to understand and that the court felt "pretty comfortable" understanding him. (Id. at 25-26.) The court would ask him to repeat if the court did not understand him. (Id.) The trial judge also commented on being comfortable with the procedures used at the hearing and court's ability to accommodate those needs at the hearing. (RT at 164.) The court delayed the arraignment in order for appropriate accommodations for his impairments to be put in place for Petitioner. (Id.)

On September 12, 2003, another trial judge held a hearing on Petitioner's nonstatutory 995 motion to set aside the preliminary examination for failure to provide advisory counsel and an American Sign Language ("ASL") interpreter. (RT, vol. 2 at 167.) The court provided a very

---

[2] The Court notes that at the preliminary hearing, he only requested advisory counsel. (RT at 1-167.)

[3] An assistive listening device amplifies sound for the hearing impaired. Dobard v. San Francisco Bay Area Rapid Transit Dist., 1993 WL 372256 (N.D. Cal. 1993).

detailed and thoughtful ruling on the motion. (Id. at 173-181.) The trial judge not only reviewed the preliminary hearing transcript but other hearings. (Id. at 173.) The issue was whether Petitioner was denied an ASL interpreter, and second, whether he was denied an advisory counsel. (Id. at 174.)

At the preliminary hearing, Petitioner had the use of an assistive listening device. (Id. at 168.) At subsequent proceedings, based on the judge's recommendation, Petitioner was provided with an assistive listening device, the CART[4] process, an ASL interpreter[5] and hearing aids. (Id. at 168.) At the preliminary hearing, Petitioner fully participated and the communication was going well. (Id. at 179.) As to the advisory counsel, the trial court concluded that advisory counsel was not appropriate for health related issues and it is not the role of the advisory counsel to step in as counsel during the times when Petitioner has a problem. (Id. at 180.) In addition, the court concluded that Petitioner was "conversant with legal concepts, and he knows how to tenaciously go about putting his point across." (Id. at 180.) The court also mentioned that she did not pick up an impediment "other than what I am used to hearing from folks who have a hearing loss." (Id. at 177.) She understood him "more clearly than any number of people who have been in my courtroom without hearing impairments. . . ." (Id.)

The record shows that Petitioner was engaged and participated fully in the preliminary hearing, the trial judge was able to understand him and if there were issues of understanding, words or sentences would be repeated. (RT, vol. 2 at 173-80.) Petitioner was also afforded the opportunity to request that words be repeated. (Id.) However, the times when requests were made to repeat words by the Court and by Petitioner were few. (Id. at 176.)

In addition there is no constitutional right to advisory counsel. Locks v. Sumner, 703 F.2d 403, 407-08 (9th Cir. 1983). Petitioner is a vigorous advocate and was able to articulate issues and present his defense well at trial. Accordingly, the trial court's denial of his request for advisory

---

[4] The CART process involves a screen that the defendant can read what is being said during the proceedings. (RT, vol. 2 at 167.)

[5] The ASL interpreter was used as a back up. When the Court could not understand what Petitioner was saying, the interpreter would say it instead. (RT, vol. 2 at 171-72.)

1 counsel did not violate any constitutional rights.

2 After a review of the proceedings in state court, the Court concludes that appellate's counsel failure to challenge the trial court's ruling denying his request to dismiss the information for failure to provide for advisory counsel and an oral interpreter at the preliminary hearing was reasonable. See Babbitt, 151 F.3d at 1173. After a *de novo* review, the Court concludes that Petitioner is not entitled to habeas relief as to this claim.

**2. Failure to Challenge Exclusion of Third Party Culpability Evidence and Failure to Challenge Trial Court's Ruling on the Consent Note**

Petitioner claims that his appellate counsel should have challenged the trial court's exclusion of third party culpability evidence regarding the victim's boyfriend's history of abuse toward the victim at a hearing on November 12, 2003. (Pet. at 6-c.) The Magistrate Judge recommended that this claim be denied. In the objections, Petitioner argues that he was not challenging the trial court's ruling at the hearing on November 12, 2003 but the trial court's exclusion of the victim boyfriend's history of abuse from Officer Serrano's testimony on November 28, 2003. (Obj. at 22.) He contends that the victim's boyfriend had a history of physically abusing the victim and had a motive for assaulting the victim. (Id.)

At the hearing on November 12, 2003, Petitioner brought forth a motion to allow the testimony of the victim's boyfriend concerning his abuse of the victim. (RT at 771.) The trial court questioned Petitioner whether he sought to question the victim about the abuse of her boyfriend or to allow the testimony of the boyfriend. (Id. at 772.) Petitioner indicated that he wanted to reserve the motion until trial because he was not sure whether he would seek the testimony of the boyfriend. (Id. at 773.) The trial court did not rule on Petitioner's motion but warned Petitioner that a hearing would need to be held on the issue and he would need to provide at least a half-day's notice if he planned to call the victim's boyfriend on the stand. (Id. at 773.) As to whether he could ask the victim about her boyfriend, the trial court told Petitioner that if the issue was not dealt with at that hearing, he will not be able to ask the victim about her boyfriend. (Id. at 774.) Petitioner did not object to the decision. (Id.) The trial court later restated, "unless I have ruled it's admissible, you're not allowed to. Do you understand?" (Id. at 776.)

At trial, Petitioner sought to question Officer Serrano about the victim's boyfriend being an "aggressive pimp and pandering individual." (RT at 1273.) The trial court sustained the prosecutor's objections and stated, "Mr. Hayes, you're going to need to stop because we've already discussed this, I've already ruled on it." (Id.) Petitioner argues that he is entitled to elicit proof that another person committed the assault and the history of the victim's boyfriend's physical abuse provided such evidence.

A review of the record shows that Petitioner failed to comply with the court rules/decision on presenting evidence regarding the history of abuse by the victim's boyfriend. Therefore, it was reasonable for appellate counsel to not challenge the trial court's ruling excluding testimony regarding the vicitm's boyfriend's history of abuse. See Babbitt, 151 F.3d at 1173.

Petitioner also argues that appellate counsel failed to challenge the late disclosure of the police note which stated, "I didn't report on time." (Pet. at 5c; Pet, Ex. K-1.) He argues that this statement creates an inference of a lapse of time that raises questions as to the victim's story. (Id. at 5-c to 6-c.) As discussed earlier, the Court concluded that at the time of discovery of the note, Petitioner could have recalled the victim to impeach her credibility or use the note as rebuttal evidence. Therefore, there was no prejudice to the late disclosure of the police note. Appellate's counsel failure to raise this issue on appeal was reasonable. See Babbitt, 151 F.3d at 1173. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 3. Failure to Challenge the Adequacy of Police Investigation of the Crimes

Petitioner argues that he requested his appellate counsel to raise the issue of the shoddy investigation of the case by Detective Serrano. (Pet. at 9-c.) Specifically, he states that Officer Serrano only recorded and preserved the victim's and her fabricated witness statements. He further used those statements to improperly bring up Petitioner's past criminal record which had no relevance in this case. (Id.) He claims that Officer Serrano failed to preserve the name of the person who made the comment "I was there. It was consensual"; he failed to investigate and obtain evidence at the scene of the alleged crime; failed to pursue the victim's boyfriend as a perpetrator since he had a history of being violent towards the victim; failed to interview witnesses; and failed to preserve or procure information about the "unknown contacted person's name, identity." (Id. at 9-c

1  to10-c.)

2  In response to Petitioner's request to add more issues on appeal, appellate counsel wrote a
3  letter dated November 18, 2004 explaining that even though the police may have been sloppy and
4  made inadequate efforts to investigate the case, and to locate the person whom the victim said she
5  thought she saw nearby, the standard is not that the police must make extraordinary efforts to
6  investigate the case. (Id., Ex, E.) Moreover, without a description or additional information about
7  this potential witness to the alleged crime, it would not be realistic for the police to locate such a
8  witness. (Id.)

9  Petitioner does not provide authority that the police has a duty to investigate the crimes more
10 thoroughly than they did. It was reasonable for appellate counsel to decline to bring this issue on
11 appeal. See Babbitt, 151 F.3d at 1173. Accordingly, the Court concludes that Petitioner is not
12 entitled to habeas relief as to this issue.

13     **4.     Failure to Challenge the Ruling Regarding the Disclosure of a Witness Address**

14 Petitioner argues that appellate counsel failed to raise the issue of the prosecutor's
15 concealment of a favorable non-confidential address of witness Rohena, who was Petitioner's
16 roommate and an important rebuttal witness. (Pet. at 12-c to 14-c.) He claims that the investigating
17 agent had the address of Rohena but refused to turn over the address so he was unable to subpoena
18 Mr. Rohena. (Id.) Mr. Rohena's statement would have impeached the victim's credibility by
19 bringing up her sexual reputation. (Id.)

20 At the September 29, 2003 pretrial discovery hearing, the court ordered that the "names,
21 addresses and telephone numbers of all persons who were contacted with respect to this case by
22 agents of the police whether or not those individuals provided information which the people thought
23 was relevant, . . ." be provided to Petitioner. (RT at 303.) On November 25, 2003, during trial,
24 when Petitioner sought to have Robert Rohena be a witness on the stand, the prosecution stated that
25 they had found him, and interviewed him but that was the last contact they had with him. (RT at
26 1486.) The prosecution could not remember where he was working. (Id.) The trial judge suggested
27 that Petitioner and the prosecution discuss stipulating to parts of his interview and to work on
28 locating the witness. (Id. at 1487-88.) Rohena did not testify at the trial. Petitioner argues that the

trial judge could have ordered the prosecutor's investigating agent to locate the address of Rohena because he was highly important to impeach the victims' testimony.

In response to Petitioner's request to add this claim on appeal, appellate counsel explained that any information of the victim's sex reputation was properly excluded at trial and he did not see any issue as to the court's ruling. (Pet., Ex. E.)

In addition, even if appellate counsel failed to challenge the ruling of the state court, the result of the proceeding would not have been different. Looking at the witness statement, Rohena would not have been a favorable witness to Petitioner. (Pet., Ex. R.) First, in a voicemail to the police, Rohena indicated he did not want to be involved in court regarding a case about "he said she said thing when they are both wrong." (Id.) Rohena also stated that Petitioner did not keep normal hours, drove one of Rohena's roommates, who was also a friend, out and expressed distrust in Petitioner regarding Rohena's possessions in the room they shared. (Id.) In addition, if Rohena had testified, it would have not helped Petitioner's case because the sex reputation of the victim was excluded from trial. (See RT at 787-792.) Therefore, appellate counsel's decision not to challenge the court's ruling was reasonable and not a basis for habeas relief. See Babbitt, 151 F.3d at 1170.

**5.     Failure to Investigate Newly Discovered Exculpatory Evidence in Support of a Habeas Petition or To Assist in Filing a Petition regarding Dixon's Declaration**

Petitioner argues that in September 2004, he discovered a man by the name of Richard Dixon who recalled being present in the area on the night in question and who provided a declaration about the victim's "bizarre sexual activities." (Pet. at 16-c.) Petitioner claims he brought this information to his appellate counsel who refused to investigate the matter or file a petition for writ of habeas corpus. In the letter dated November 18, 2004, appellate counsel explained that after reviewing the information provided by Petitioner, counsel did not see how Dixon's declaration would provide a basis for relief because the declaration fails to state why he was not called as a witness during the trial and any information about the victim's reputation evidence regarding trading drugs for sex was properly excluded by the trial court. Petitioner has not provided any authority that appellate counsel's reasoning is invalid. Accordingly, Petitioner has not overcome the presumption of competency with this issue.

Based on the above, the Court concludes that after a *de novo* review of the record, Petitioner has not shown that appellate counsel provided ineffective assistance of counsel.

**F.     Certificate of Appealability**

Rule 11 of the Federal Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should be issued only where the petition presents "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability "should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Based on the Court's review of the petition, the Court finds no issues are debatable among jurists of reason and that no jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See Slack, 529 U.S. at 484. Accordingly, a certificate of appealability is DENIED as to the claims in the petition.

**Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED that the Court **ADOPTS** the report and recommendation of the Magistrate Judge in its entirety; and **DENIES** the petition for writ of habeas corpus. The Court also **DENIES** a certificate of appealability and **DENIES** Petitioner's motion for ruling on pending objection pleading as **MOOT**.   The Court further **DENIES** Petitioner's motion to appoint counsel and/or discovery process as **MOOT**.

IT IS SO ORDERED.

DATED:  June 28, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge